## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SCOTTS VALLEY BAND OF POMO
INDIANS,
     2727 Syston Drive
     Concord, CA 94520

          Plaintiff,

v.

DOUGLAS BURGUM, in his official capacity
as Secretary of the U.S. Department of the
Interior
     1849 C Street, N.W.
     Washington, D.C. 20240

SCOTT DAVIS, in his official capacity as
Senior Advisor to the Secretary of the U.S.
Department of the Interior
     1849 C Street, N.W.
     Washington, D.C. 20240

and

UNITED STATES DEPARTMENT OF
THE INTERIOR,
     1849 C Street, N.W.
     Washington, D.C. 20240

          Defendants.

Civil Action No.:

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Scotts Valley Band of Pomo Indians ("Tribe") brings this action for declaratory

and injunctive relief to prevent the Defendants, Secretary of the Interior Douglas Burgum, Senior

Advisor to the Secretary of the Interior Scott Davis, and the  Department of the Interior

1

("Department"), (collectively, the "Defendants") from unlawfully suspending a final agency action, reopening the administrative record, and accepting or considering extra-record evidence in connection with its January 10, 2025 Gaming Eligibility Determination. *See, Exhibit A*. The Defendants' action undermines a final determination that vested the Tribe with jurisdiction over gaming on its trust land and is causing ongoing harm to the Tribe's sovereign, economic, and contractual and property interests.

The unlawful agency action relates to gaming eligibility of 160.33 acres of land located in the City of Vallejo, California (the "Parcel") as restored land under the Indian Gaming Regulatory Act, 18 U.S.C. §§ 2701, 2719 ("IGRA"), and 25 CFR Part 292.

On January 10, 2025, the Department issued a final decision concluding that certain land in the City of Vallejo, California (the "Vallejo Site") qualifies as "restored lands" under IGRA, 25 U.S.C. § 2719(b)(1)(B)(iii), and that the site is eligible for gaming. This decision was made following a court-ordered remand and on a closed administrative record.

The Tribe's request for the trust acquisition and gaming eligibility determination dates back to 2016. In 2019, the Department denied the request based solely on a finding that the Tribe lacked a significant historical connection to the Vallejo Site. The Tribe challenged that denial in federal court. On September 30, 2022, the United States District Court for the District of Columbia ruled that the Department's denial was arbitrary and capricious when considered in light of the Indian canon of statutory construction and remanded the matter for further consideration. *Scotts Valley Band of Pomo Indians v. United States Dep't of the Interior*, 633 F. Supp. 3d 132 (D.D.C. 2022).

On remand, the Department sought the Tribe's views on whether it wished to submit additional evidence for the administrative record. The Tribe responded that it did not, and the

Department then decided not to reopen the record or solicit materials from other parties. The Department subsequently issued its January 10, 2025 Eligibility Determination concluding that the Tribe met all the regulatory criteria for restored lands.

On March 27, 2025, the Defendant Scott Davis ("Davis") issued a letter ("March 27, 2025 Rescission") unilaterally and without notice or consultation with the Tribe, purporting to "temporarily rescind" the final Gaming Eligibility Determination pending a reconsideration because, "The Secretary is concerned that the Department did not consider additional evidence submitted after the 2022 Remand." *See, Exhibit B.* Defendant Davis's letter further stated, "we invite the Tribe and other interested parties to submit evidence and/or legal analysis regarding whether the Vallejo Site qualifies as restored lands" under IGRA. *Id.* The March 27, 2025 Rescission contravenes the requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and established principles of administrative law that preclude an agency from reopening the record or altering final agency action without proper legal authority and process. The Defendants' action violates the Tribe's due process rights, exceeds the Defendants' authority under 43 C.F.R. § 4.5, and undermines the integrity of the final agency action on which the Tribe has reasonably relied to its detriment.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1362, as a civil action brought by an Indian tribe with a governing body duly recognized by the Secretary of the Interior wherein the matter in controversy arises under the Constitution, laws or treaties of the United States, including IGRA; regulations implementing IGRA at 25 CFR Part 292; the Administrative Procedure Act, 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act, 28 U.S.C.

§§ 2201-2202.

2.      Venue is proper in this District under 28 U.S.C. § 1391 (b)(2) and (e), in that a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendants are an agency of the United States and officers thereof acting in their official capacities.

## PARTIES

3.      Plaintiff SCOTTS VALLEY BAND OF POMO INDIANS is a federally recognized Indian tribe with newly acquired trust land in Vallejo, California and two tribal offices located in Lakeport and Concord, California. *See* Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 89FR 944, 946(January 8, 2024) (listing "Scotts Valley Band of Pomo Indians of California").

4.      Defendant DOUGLAS BURGUM is the Secretary of the Department and, as such, is vested with authority to execute federal law and policy respecting Indian tribes. He is sued in his official capacity.

5.      Defendant SCOTT DAVIS is a Senior Advisor to the Secretary, who while exercising by delegation the authority of the Assistant Secretary – Indian Affairs, issued the March 27, 2025 Rescission. He is sued in his official capacity.

6.      Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is the federal agency charged by statute with the primary administration of Indian affairs for the federal government (25 U.S.C. §§ 2 and 9) and is responsible for implementing IGRA and related regulations.

## FACTUAL ALLEGATIONS

### *Background on Scotts Valley Band of Pomo Indians*

4

7.      The Scotts Valley Band of Pomo Indians is a federally recognized Indian tribe and a political successor to the Mo-al-kai and Ca-la-na-po bands of Pomo Indians, who have lived in Northern California since time immemorial. In 1851, the Tribe entered into a treaty with the United States—the Treaty of Camp Lu-pi-yu-ma—through which it agreed to cede vast tracts of its ancestral land in exchange for the promise of a reservation. That promise was never fulfilled. The treaty was signed but never ratified by the Senate, and no reservation was ever established. Instead, the Tribe became landless.

8.      In 1911, the federal government acquired a small parcel of land for the Tribe, later known as the Sugar Bowl Rancheria. That land was stripped away in 1958, when Congress enacted the California Rancheria Termination Act. 72 Stat. 619 (Aug. 18, 1958). The Act terminated the federal trust relationship with the Tribe and extinguished the reservation status of the Sugar Bowl Rancheria. The Tribe once again became landless—this time not by treaty, but by statute.

9.      In 1986, the Tribe (and other California Indian tribes) sued the United States, alleging that the termination of the federal trust relationship with the Tribe was unlawful because the United States had not complied with all the requirements of the 1958 Rancheria Termination Act. As part of a settlement of the lawsuit, the United States reinstated the status of the Tribe as a federally recognized tribe, effective September 5, 1991. 57 Fed. Reg. 5214 (Feb. 12, 1992). Since that time, the United States has continuously recognized the Tribe as entitled to all the privileges and immunities of Indian tribes recognized by the United States.

10.     In 2016, the Tribe took steps toward rebuilding what had been lost. The Tribe filed an application with the Department to acquire the Vallejo Site in trust as a restored homeland.  It

also sought a determination under IGRA that the land qualified as "restored lands" eligible for gaming purposes under 25 U.S.C. § 2719(b)(1)(B)(iii).

### IGRA and Implementing Regulations

11.    On October 17, 1988, Congress enacted IGRA for the purposes of, among other things, "provid[ing] a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments[.]" 25 U.S.C. § 2702(1).

12.    IGRA governs the conduct of gaming on "Indian lands," which are defined by the Act as: "(A) all lands within the limits of any Indian reservation; and (B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe of individual or held by any Indian tribe of individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power." 25 U.S.C. § 2703(4).

13.    IGRA prohibits gaming "on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988," subject to certain specified exceptions. 25 U.S.C. § 2719.

14.    One of the specified exceptions to the prohibition on gaming on post-1988 trust acquisitions is the "restored lands" exception, which provides that the section 2719 prohibition "will not apply when ...lands are taken into trust as part of...the restoration of lands for an Indian tribe that is restored to Federal recognition." 25 U.S.C. § 2719(b)(1)(B)(iii).

15.     The Department, through the Bureau of Indian Affairs ("BIA"), has promulgated regulations to "articulate standards that the BIA will follow in interpreting the various exceptions to the gaming prohibitions contained in section 2719 of IGRA." Gaming on Trust Lands Acquired After October 17, 1988, 73 Fed. Reg. 29354 (May 20, 2008); 25 CFR §§ 292.1-292.26.

16.     The first requirement of the regulations to qualify for the restored lands exception is that the tribe must have been federally recognized, then "lost its government-to-government relationship," then had its government-to-government relationship restored (25 CFR § 292.7 (a), (b), (c)). The regulations also define each of these terms. 25 CFR §§ 292.8, 292.9, 292.10.

17.     The second requirement of the regulations to qualify for the restored lands exception relates to the land itself: the land must be located within the same state as the tribe; there must be a "modern connection" between the land and the restored tribe; there must be a "significant historical connection" between the land and the tribe; and there must be a "temporal connection" between the date of the request for trust acquisition and the tribe's restoration. 25 CFR §§ 292.11 (c), 292.12.

18.     The regulations authorize Indian tribes to request an opinion, before land is placed into trust, whether that parcel would qualify for one of the exceptions to the prohibition against gaming on trust land acquired after 1988. The regulations specify that such requests, commonly called an Indian Land Opinions ("ILO"), are to be submitted to the Office of Indian Gaming ("OIG"), an office within Assistant Secretary-Indian Affairs (AS-IA) that is the primary advisor to the Secretary and AS-IA on Indian gaming and the requirements of IGRA.

**_The 2019 Negative Decision, Litigation, and Remand_**

7

19.     In 2019, the Department denied SVBPI's request for an Indian Lands Opinion, claiming the Tribe had failed to demonstrate a "significant historical connection" to the Vallejo Site as required under 25 C.F.R. § 292.12. The Tribe challenged that decision in the U.S. District Court for the District of Columbia. In a ruling issued on September 30, 2022, the court agreed with the Tribe, holding that the Defendants' denial was arbitrary and capricious when measured against the Indian canon of construction. *Scotts Valley Band of Pomo Indians v. United States Dep't of the Interior*, 633 F. Supp. 3d 132 (D.D.C. 2022). The court remanded the matter for further consideration, instructing the Department to reassess the Tribe's eligibility under IGRA.

20.     On remand, the Department consulted with the Tribe and asked whether it wished to reopen the administrative record. The Tribe declined. The Department then decided to issue a final determination based solely on the existing administrative record, consistent with the court's instructions and established administrative law principles.

### *The January 10, 2025 Favorable Decision*

21.     On January 10, 2025, after nearly a decade of administrative review and litigation, the Department issued a favorable and final decision on the Tribe's application to take the Vallejo Site into trust, which also contained the Department's determination that the Vallejo Site qualified as "restored lands" under IGRA. *Ex.* A. The decision stated explicitly that the Tribe "may conduct gaming on the Vallejo Site once it is acquired in trust." That same day, the Department acquired the Vallejo Site into trust status under 25 C.F.R. Part 151.

22.     The January 10 decision marked a historic moment for the Tribe. For the first time in nearly 70 years, the Tribe had trust land. For the first time in its modern history, it had a viable

8

opportunity to pursue economic self-sufficiency through gaming. And for the first time in decades, the Tribe had certainty that it had followed the rules, made its case, and received a lawful and final determination from the federal government.

23.     Relying on that finality, the Tribe began moving forward. It authorized more than $1.88 million in project-related expenditures, entered into infrastructure and environmental contracts, presented the City of Vallejo with a reimbursement agreement to fund the development of an intergovernmental agreement, and formally began Tribal-State compact negotiations with the Governor of California. It also submitted its gaming ordinance to the National Indian Gaming Commission ("NIGC"), which approved the ordinance on March 25, 2025—confirming the Tribe's eligibility to conduct gaming on the Vallejo Site under IGRA.

24.     Then, without warning, the ground shifted.

### *The March 27, 2025 Recission Letter*

25.     On March 27, 2025—just 76 days after issuing its final decision—the Defendant Scott Davis issued a letter purporting to "temporarily rescind" the January 10 Eligibility Determination. Defendants did not provide the Tribe with prior notice or opportunity to be heard prior to issuing the letter. *Ex.* B.  The letter was signed by Defendant Davis as, "Senior Advisor to the Secretary, acting by delegation of the Assistant Secretary – Indian Affairs." Exhibit B. The letter cited no statutory authority. It invoked 43 C.F.R. § 4.5 as justification for reopening the record and soliciting new materials. The letter expressly instructed: "During the pendency of this reconsideration, neither the Tribe nor any other entity or person should rely on the Gaming Eligibility Determination." *Id.*

9

26.    The effect was immediate and destabilizing. The rescission cast a cloud over the Tribe's legal and financial footing. It upended project planning, jeopardized negotiations with the City of Vallejo and the State of California and introduced legal uncertainty into contracts, governmental negotiations, and regulatory processes that had already been set in motion.

27.    While the Defendants established May 30, 2025, as the deadline for any interested party to submit any additional evidence or legal analysis regarding whether the Vallejo Site qualifies as restored lands, there is no deadline or prescribed timeline for the Department to complete its reconsideration or issue a new final decision.

28.    Worse still, the Defendants' action did not arise from any formal challenge by a party with standing. Rather, it was issued in response to submissions from third-party Indian tribes whose legal challenges to the Eligibility Determination are already pending before this Court. Those tribes had no right to a reopened record—and certainly no right to bypass judicial process in favor of a secretive, *ad hoc* reconsideration within the agency.

29.    This case seeks to restore the rule of law. The Defendants' rescission is procedurally indefensible, legally unauthorized, and profoundly harmful to the Scotts Valley Band. The Tribe followed every rule. It fought for decades to regain land and opportunity. It earned a final decision. That decision now deserves to be honored—not quietly reconsidered.

30.    The March 27 Rescission constitutes final agency action subject to judicial review, as it has immediate and substantial legal and practical consequences for the Tribe.  The March 27, 2025 Rescission immediately, and without notice, changes the applicable substantive gaming laws on the Vallejo Parcel from the laws of the Tribe to the laws of the State of California, pursuant to

18 U.S.C. § 1166, which applies "all state laws pertaining to the licensing, regulation, or prohibition of gambling to Indian Country," unless such gambling is conducted pursuant to the Indian Gaming Regulatory Act. The March 27, 2025 Rescission thus immediately infringes on the Tribe's sovereignty over its territory, which constitutes irreparable injury. The March 27, 2025 Rescission further impairs the Tribe's legally protected sovereign power to negotiate a tribal-state gaming compact with the State of California pursuant to IGRA, 25 U.S.C. § 2710(d)(3)(A). The March 27, 2025 Rescission further impairs the Tribe's property rights, as it deprives (or indefinitely delays) the Tribe of the ability to pursue the most economically valuable use of its trust land—Class III gaming. The March 27, 2025 Recission also deprives the Tribe of property interests contained in contracts that it entered into with multiple private vendors for infrastructure planning, water and wastewater engineering, environmental compliance, and technical site assessments, as well as an agreement with the City of Vallejo for its review and planning costs, all in reliance on the Eligibility Determination.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of the Administrative Procedure Act

### (5 U.S.C. § 706)

31.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

32.     Defendants' March 27, 2025 Rescission is arbitrary, capricious, an abuse of discretion, and contrary to law in violation of 5 U.S.C. § 706(2).

33.    Defendants' March 27, 2025 Rescission is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of 5 U.S.C. § 706(2).

34.    Defendants acted without legal authority to rescind and reconsider their prior decision under 43 C.F.R. § 4.5 because the decision is unlawfully untimely and pretextual in a manner that does not comport with the Department's regulations and rules relating to review.

35.    Defendant Scott Davis  unlawfully exercised the authority reserved exclusively to the Secretary of the Interior under 43 C.F.R. § 4.5.

36.    Defendants unlawfully reopened a closed record and invited extra-record evidence without any statutory or regulatory basis. In particular, 43 C.F.R. § 4.5, which Defendant  Davis cites as authorization to rescind the prior decision for reconsideration,  provides that the reconsideration will be based upon the existing administrative record without supplementation by new "evidence." 43 C.F.R. § 4.5(c).

37.    Defendants acted without notice, consultation, or opportunity to be heard, depriving the Tribe of due process.

38.    The March 27, 2025 Rescission effectively constitutes a withdrawal or suspension of a final agency action, without satisfying the legal requirements for reversal or reconsideration.

## COUNT II

### Violation of Procedural Due Process

### (U.S. Const. amend. V)

39.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

40.    The Department's final Gaming Eligibility Determination issued on January 10, 2025, established the Tribe's sovereign and legally protected right to regulate and operate gaming activity on the Vallejo Parcel.

41.    The Department's final Gaming Eligibility Determination issued on January 10, 2025, created a legitimate expectation and protectable property, liberty and sovereign interests for the Tribe under established law and regulations.

42.    The Tribe has relied on that final agency action to undertake substantial contractual and financial obligations in furtherance of the gaming project, including development agreements and loan commitments.

43.    By purporting to rescind that final determination without formal notice, hearing, or opportunity to be heard, and by reopening the administrative record to consider extra-record evidence submitted by third parties with no legal standing, the Defendants deprived the Tribe of its legally protected interests, including its sovereign rights over its land and its property interests, without due process of law.

44.    Defendants' actions constitute a violation of the Tribe's legally protected rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

**COUNT III**

**Ultra Vires Agency Action**

**Violation of the Administrative Procedure Act  (5 U.S.C. § 706)**

**Indian Gaming Regulatory Act (25 U.S.C. § 2706, 2710)**

13

45.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

46.     Defendants' March 27, 2025 Rescission exceeds the authority granted to it by Congress and is ultra vires, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. The Indian Gaming Regulatory Act assigns jurisdiction over gaming on trust lands to the National Indian Gaming Commission and the Tribe once land is acquired in trust and a valid gaming ordinance is approved. 25 U.S.C. §§ 2706, 2710.

47.     Nothing in IGRA or 25 C.F.R. Part 292 authorizes Defendants to rescind a final gaming eligibility determination once trust acquisition is complete. Nor does 43 C.F.R. § 4.5 confer authority to suspend final agency action or reopen an administrative record absent notice and due process.

48.     Defendants' unilateral rescission of a final, jurisdictional determination is ultra vires and must be set aside.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that the Defendants' March 27, 2025 Rescission and related actions are unlawful;

B. Enjoin Defendants from reopening the administrative record established prior to the Eligibility Determination;

14

C.  Enjoin the Defendants from accepting, considering, or relying on any evidence or argument not contained in the administrative record as of 2019;

D.  Issue a temporary restraining order and preliminary injunction maintaining the effect of the Eligibility Determination pending resolution of this action;

E.  Set aside the Recission letter and reinstate the Eligibility Determination.

F.  Award Plaintiff its costs and attorneys' fees; and

G.  Grant such other relief as the Court deems just and proper.

Dated: April 1, 2025                          Respectfully submitted,

By:     /s/ Patrick R. Bergin

Patrick R. Bergin (D.C. Bar No. 493585)
PEEBLES BERGIN SCHULTE & ROBINSON LLP
2020 L Street, Suite 250
Sacramento, California 95811
(916) 441-2700
pbergin@ndnlaw.com

Conly J. Schulte (D.C. Bar No. NE20158)
PEEBLES BERGIN SCHULTE & ROBINSON LLP
945 Front St.
Louisville, CO 80027
(303) 284-8228
cschulte@ndnlaw.com

Arlinda F. Locklear (D.C. Bar No. 962845)
4113 Jenifer Street, NW
Washington, DC 20015
(202) 237-0933
alocklearesq@verizon.net

Attorneys for Scotts Valley Band of Pomo Indians